Ryan L. McBride, Esq. (SBN 297557)
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Mark J. Green, Esq. (SBN 361513)
mark@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
JACOB KHORSANDI

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JACOB KHORSANDI**, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>**GRAYSTONE TRADING, LLC**, a company; **ANDREW ANTILES**, an individual;<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) 47 U.S.C §§ 227, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

KAZEROUNI LAW GROUP, APC

**INTRODUCTION**

1. Plaintiff JACOB KHORSANDI ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against GRAYSTONE TRADING, LLC ("GRAYSTONE"), a company, and ANDREW ANTILES a/k/a Andy Antiles ("ANTILES") for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants negligently and/or willfully contacting Plaintiff on Plaintiff's telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*, ("TCPA") and related regulations, thereby invading Plaintiff's privacy, specifically for claims under the internal do-not-call provisions of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) and the 'quiet hours' provision of 47 C.F.R. § 64.1200(c)(1).

2. Plaintiff alleges as follows upon personal knowledge as to himself and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

3. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4. In 1991, Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11.

5. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2017)

(quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

6. Although a caller may obtain prior express consent from a consumer, prior express consent may nevertheless be revoked.

7. The right to revocation is consistent with the common law principle that consent is revocable and honors the purpose of the TCPA.

8. Moreover, the Ninth Circuit has found that a company which sends telemarketing calls or text messages may not designate an exclusive method or means for a consumer to revoke prior express consent to receive telemarketing solicitations by phone, consumers are free to revoke consent by any reasonable means. *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017), *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1102 (N.D. Cal. 2015) ("consumers may revoke consent through any reasonable means, either orally or in writing"), *Singer v. Las Vegas Ath. Clubs*, 376 F. Supp. 3d 1062, 1074 (D. Nev. 2019) ("Consumers may revoke their consent, orally or in writing, to be contacted under the TCPA.").

9. Defendants have violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. §§ 64.1200(c-d) by bombarding Plaintiff and other similarly situated consumers' cellular telephones with non-emergency communications and telemarketing phone calls after such consumers, including Plaintiff, revoked prior consent to receive such communications.

10. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone communications exactly like those alleged in this case.

11. In response to Defendants' unlawful conduct, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telemarketing phone communications to non-consenting consumers, as well as an award of statutory damages and treble damages (for knowing and/or willful violations) for Plaintiff and each of the Class Members, per violation, together with court costs, and reasonable attorneys' fees.

12. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.



KAZEROUNI LAW GROUP, APC

13. Unless otherwise stated, Plaintiff alleges that any violations by Defendants were knowing and intentional, and that Defendants did not maintain procedures reasonably adapted to avoid any such violation.

14. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

**JURISDICTION AND VENUE**

15. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

16. The Court has personal jurisdiction over Defendants because Defendants conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

17. Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 because the conduct complained of herein arose within this District.

18. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

a. Defendants are authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this District;
b. Defendants do substantial business within this District;
c. Defendants are subject to personal jurisdiction in this judicial district because Defendants have availed themselves of the laws and markets within this District; and
d. The harm to Plaintiff occurred within this District.




KAZEROUNI LAW GROUP, APC

## PARTIES

19. Plaintiff is a natural person and resident of Los Angeles County, State of California. Plaintiff is, and at all times relevant herein was, a "person," as defined by 47 U.S.C. § 153(39).

20. Defendant GRAYSTONE is a limited liability company formed under the laws of the State of Wyoming, with a principal place of business located in Sheridan, Wyoming. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

21. Defendant ANTILES purports to be the "Founder and CEO" of Defendant GRAYSTONE. *See* LinkedIn Screenshot below.[1]




22. Moreover, Defendant ANTILES is the signatory on multiple of the below-described text message solicitations Plaintiff received subsequent to communicating his request to cease such solicitations.

23. Defendant ANTILES is, and at all times mentioned herein was, a "person"

[1] https://www.linkedin.com/in/andy-antiles-2352501b4

as defined by 57 U.S.C. § 153(39).

24. Defendant GRAYSTONE represents itself as a "Self-Owned" company. See LinkedIn Screenshot below.[2] Plaintiff is informed and believes, and thereon alleges, that Defendant ANTILES is the sole owner and is involved in all operations of GRAYSTONE.


Website
http://graystonepremium.com
Industry
Education
Company size
51-200 employees
Type
Self-Owned
Founded 2021

25. At all times relevant, Defendants conducted business in the State of California and within this judicial district.

**TCPA BACKGROUND**

26. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

27. The TCPA was designed to prevent calls and messages like those

[2] https://www.linkedin.com/company/graystone-trading-llc



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

28. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[3] The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.

29. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

30. Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

---

[3] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on October 6, 2026: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

31. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendants' texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party …"

32. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

33. As of October 16, 2013, unless the recipient has given *prior express written consent*,[4] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibit solicitations to residences that use an artificial voice or a recording.

---

[4] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).



KAZEROUNI LAW GROUP, APC

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.
- Prohibit autodialed calls that engage two or more lines of a multi-line business.
- Prohibit unsolicited advertising faxes.
- Prohibit certain calls to members of the National Do-Not Call Registry.

34. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

35. Accordingly, the entity can be liable under the TCPA for a call or text made on its behalf, even if the entity did not directly place the call or send the text. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

36. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or




KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

37. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(c)(5).

## **FACTUAL ALLEGATIONS**

38. Defendants are in the business of providing courses purporting to train individuals in stock trading to consumers throughout the United States and in the State of California.

39. In Defendants' overzealous attempt to market their products and services, Defendants knowingly and willfully made (and continue to make) unsolicited telemarketing phone communications without the prior express written consent of the recipients thereof.

40. Through this conduct, Defendants have violated the TCPA and invaded the privacy of Plaintiff and the members of the Classes.

41. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number ending in 4364 (the "Cell Phone"). Plaintiff is the sole user and/or subscriber of the Cell Phone.

42. Plaintiff uses his Cell Phone for residential purposes including calling and texting friends and family.

43. Sometime prior to June 6, 2025, Plaintiff saw an Instagram post advertising Defendants' courses.

44. Upon clicking on Defendants' post, Plaintiff was prompted to send a direct message via Instagram to Defendant ANTILES. Plaintiff was directed to "Send 'TRADE9' below."

45. Accompanying the post was a survey which prompted Plaintiff to provide certain information, including: age, location, name, Instagram username, best email, best phone, goals for stock trading, and liquid net worth.

46. Defendants' survey did not contain an explicit opt-in message seeking express consent to send Plaintiff text messages or otherwise indicating that such messages would be sent to Plaintiff after he provided his phone number to Defendants.

47. After messaging "TRADE9," Plaintiff received a message from Defendant ANTILES, whereafter ANTILES conversed with Plaintiff by direct message gathering information concerning Plaintiff's interest in and expectations surrounding Defendants' course offerings.

48. Eventually, Plaintiff and ANTILES set a time to discuss by Zoom videoconference on or about June 6, 2025.

49. During the Zoom call, after hearing more about Defendants' program, Plaintiff declined to proceed with the course. Hence, no established business relationship subsequently existed between Plaintiff and Defendants. Furthermore, even if a business relationship had been established, it was severed by Plaintiff's declination to proceed with the course.

50. On July 29, 2025 at 10:51 AM, Defendants sent a text message solicitation to Plaintiff's Cell Phone. The message read: "My team told me not to do this . . . but I'm launching a crazy summer special. If you've been sitting on the sidelines, now's your shot to start earning stock market income. Only 20 spots. It will sell out fast. Schedule your free roadmap call now: [link]."

51. Pursuant to 47 C.F.R. § 64.1200(f)(5), an "established business relationship" is one formed "on the basis of [a consumer]'s inquiry or application regarding products or services . . . within the three months immediately preceding the date of the call [alleged to violate the TCPA.]" Hence, because more than three months elapsed between Plaintiff's initial inquiry made sometime prior to June 6, 2025 and September 6, 2025, to the extent Plaintiff's refusal to continue with Defendants' course



KAZEROUNI LAW GROUP, APC

on June 6, 2025 did not effectively terminate the business relationship between him and Defendant, any purported established business relationship had definitively lapsed by September 6, 2025.

52. On September 30, 2025, at 1:54 PM, Defendants sent a text message solicitation to Plaintiff's Cell Phone. The message read, "Jacob, I just recorded a 16-minute YouTube video breaking down how I made $72,489 this month trading stocks for just 1-2 hours a day. Check it out here: [YouTube link]."

53. On November 14, 2025 at 7:56 AM, Defendants sent a text message solicitation to Plaintiff's Cell Phone. The message read, "Jacob, it's Andy from Graystone Trading. I just recorded a brand new training showing how 350+ of my students are earning extra, reliable income WITHOUT using their own money. This underground opportunity called 'Funded Trading' is exploding right now. Learn more here: [link]."

54. On December 15, 2025 at 2:45 PM, Defendants sent a text message solicitation to Plaintiff's Cell Phone advertising a promotion commemorating the company's fifth anniversary.

55. On June 16, 2026 at 7:55 AM, Defendants sent a text message solicitation to Plaintiff's Cell Phone. The message read: "Andy Antiles here! Today at 12:00 PM ET learn how the stock market can become your next $5k-$10k/month play. Reply YES to save your spot."

56. Also on June 16, 2026, at 9:11 AM, Defendants sent two (2) further text message solicitations to Plaintiff's Cell Phone. The messages read, "Learn how I made $72,815 in May with a 'weird' stock market system. Join live masterclass now: [Zoom link]" and "DOORS CLOSING[.] This is your last chance, join now to learn how to make $5k-$10k+/month in 2026: [Zoom link][.]"

57. Both messages referred to in Paragraph 55 above were signed "Andy at Graystone."

58. Plaintiff is informed and believes, and thereon alleges, that "Andy



KAZEROUNI LAW GROUP, APC

Antiles" (and variations thereupon) refers to Defendant ANTILES and that each message described herein — not only those signed with ANTILES' full name — was sent by ANTILES or by Defendant GRAYSTONE on ANTILES' behalf.

59. In reply to Defendants' three June 16th messages, Plaintiff responded, "Unsubscribe me and take me off this [sic] marketing messages[.]"

60. Consequently, as of June 16, 2026, Plaintiff had effectively revoked any purported prior consent to receive solicitations by phone from Defendants. *See* 47 C.F.R. § 64.1200(a)(10) ("Any revocation request made . . . using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or "*unsubscribe*" sent in reply to an incoming text message . . . constitutes a reasonable means per se to revoke consent.") (emphasis added).

61. On June 17, 2026 at 8:30 AM, Defendants sent an additional text message solicitation to Plaintiff's Cell Phone. Defendants' message read, "Andy Antiles here! Tonight at 6:00 PM ET learn how the stock market can become your next $5k-$10k/month play. Reply YES to save your spot."

62. Plaintiff replied to Defendants' text the same day, "Stop sending me promotions and marketing[.]"

63. On June 17, 2026 at 2:46 PM, Defendants sent two (2) further text message solicitations to Plaintiff's Cell Phone. The messages promoted Defendants' "'weird' stock market system" in language substantially identical to Defendants' messages sent June 16, 2026 at 9:11 AM and were similarly signed "Andy at Graystone."

64. On June 18, 2026 at 9:47 AM, Defendants sent an additional two (2) text message solicitations to Plaintiff's Cell Phone. The messages promoted Defendants' "'weird' stock market system" in language substantially identical to its previous messages and were signed "Andy at Graystone."

65. On June 19, 2026 at 8:25 AM, Defendants sent an additional two (2) text message solicitations promoting its "stock market system" to Plaintiff's Cell Phone.

KAZEROUNI LAW GROUP, APC

66. On June 21, 2026 at 9:00 AM, Defendants sent an additional text message solicitation advertising that consumers "learn how the stock market can become your next $5k-$10k/month play" to Plaintiff's Cell Phone.

67. Also on June 21, 2026, at 10:54 AM, Defendants sent an additional two (2) text message solicitations promoting its "stock market system" to Plaintiff's Cell Phone.

68. On June 24, 2026 at 1:04 PM, Defendants sent an additional text message solicitation inviting consumers to "learn how the stock market can become your next $5k-$10k/month play" to Plaintiff's Cell Phone.

69. Also on June 24, 2026, at 2:57 PM, Defendants sent an additional two (2) text message solicitations promoting its "stock market system" to Plaintiff's Cell Phone.

70. On July 1, 2026 at 8:30 AM, Defendants sent an additional text message solicitation inviting consumers to "learn how the stock market can become your next $5k-$10k/month play" to Plaintiff's Cell Phone.

71. Also on July 1, 2026, at 3:07 PM, Defendants sent an additional two (2) text message solicitations promoting its "stock market system" to Plaintiff's Cell Phone.

72. On July 5, 2026 at 10:01 AM, Defendants sent an additional three (3) text message solicitations to Plaintiff's Cell Phone, reciting substantially similar promotions as described above.

73. On July 7, 2026 at 8:18 AM, Defendants sent an additional three (3) text message solicitations to Plaintiff's Cell Phone, reciting substantially similar promotions as described above.

74. The same day, Plaintiff replied to Defendants' text messages, "Stop sending me these marketing or advertising messages[.]"

75. All in all, Defendants sent twenty-two (22) text message solicitations to Plaintiff's Cell Phone after Plaintiff explicitly revoked any purported prior

KAZEROUNI LAW GROUP, APC

authorization for Defendants to direct such messages to Plaintiff's Cell Phone.

76. Such text messages from or on behalf of Defendants constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200, as they were an attempt to promote or sell Defendants' services.

77. Plaintiff received two or more telephone solicitations from Defendants within a 12-month period after Plaintiff told Defendants to stop texting Plaintiff.

78. Defendants' nine (9) text message solicitations sent subsequent to June 30, 2026 — ten (10) business days following Plaintiff's explicit revocation request — are unreasonable as a matter of law pursuant to 47 C.F.R. § 64.1200(d)(3).

79. Plaintiff maintains that Defendants' conduct in sending any text message solicitations following Plaintiff's explicit and reasonable revocation request on June 16, 2026, was unreasonable as to all twenty-two (22) such messages.

80. Moreover, in sending messages at (i) 7:56 AM on November 14, 2025 and at (ii) 7:55 AM on June 16, 2026, Defendants "initiate[d] any telephone solicitation to [a]ny residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)," in violation of 47 C.F.R. § 64.1200(c)(1).

81. Defendants' unsolicited telephone communications constituted telemarketing and had a commercial purpose.

82. Upon information and belief, Defendants did not make the telephone solicitations in error.

83. At all relevant times, Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the internal do-not-call provisions in 47 C.F.R. §§ 64.1200(d)(1)-(4) and the 'quiet hours' provision of 47 C.F.R. § 64.1200(c)(1).

84. Defendants did not initiate the telephone communications to Plaintiff for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

85. Each of the above unsolicited telephonic communications by Defendants



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

and/or its agents violated 47 U.S.C. § 227(c)(5).

86. Defendants' telephonic communications forced Plaintiff to be deprived of the privacy and utility of Plaintiff's Cell Phone by forcing Plaintiff to ignore or reject Defendants' disruptive calls, voice messages, dismiss alerts, and/or silence Plaintiff's Cell Phone as a result of Defendants' incessant unsolicited telephone calls.

87. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendants sent the text messages to Plaintiff without Plaintiff's consent, Defendants failed to address or respect the limitations imposed by the TCPA. In doing so, Defendants invaded Plaintiff's privacy and violated the spirit and intent behind the TCPA.

88. Receiving Defendants' repeated unsolicited telemarketing drained Plaintiff's phone battery, consumed space on Plaintiff's Cell Phone, and caused Plaintiff additional electric expenses and wear and tear on Plaintiff's phone and battery.

89. The cumulative effect of unsolicited telephone communications like Defendants' poses a real risk of ultimately rendering the Cell Phone unusable for other purposes as a result of the Cell Phone's memory being taken up.

90. Plaintiff was personally affected because Plaintiff was frustrated, aggravated, distressed, disturbed, and felt harassed that Defendants and/or its agents continued to direct unsolicited and unauthorized telemarketing communications to Plaintiff's Cell Phone.

91. Defendants' violations caused Plaintiff to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2)

intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

92. Because Plaintiff is alerted when a call is made to Plaintiff's Cell Phone, the unsolicited telephone solicitations that Defendants transmitted to Plaintiff's Cell Phone invaded Plaintiff's privacy, were nuisances, and distracted and aggravated Plaintiff upon receipt.

93. Plaintiff was personally affected and damaged by Defendants' aforementioned conduct because Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically protected by the TCPA. Plaintiff was frustrated and distressed that Defendants annoyed Plaintiff with unwanted telephonic solicitations, without Plaintiff's prior express written consent, and following Plaintiff's reasonable revocation request.

94. Defendants' telephonic communications forced Plaintiff and Class members to live without the utility of their cellular telephones by forcing Plaintiff and Class members to silence their cellular telephones and/or block incoming numbers and/or interrupted their desired use of their cellular telephones.

95. Through the above conduct, Defendants violated 47 U.S.C. §§ 227, *et seq*. and the internal do-not-call provision of 47 C.F.R. § 64.1200(d)(6), as well as the 'quiet hours' provision of 47 C.F.R. § 64.1200(c)(1).

**STANDING**

96. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See, Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

///



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

***The "Injury in Fact"***

97. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

98. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Id.* at 340. In this case, Defendants made numerous unsolicited telephone communications to Plaintiff's cellular telephone. Such phone communications are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

99. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendants invaded Plaintiff's privacy and peace by directing unsolicited telephone calls to Plaintiff's cellular telephone. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time to see who was calling and silencing or ignoring Defendants' calls. All of these injuries are particularized and specific to Plaintiff and will be the same injuries suffered by each member of the putative class.

***The Injury is "Traceable to the Conduct of Defendant"***

100. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that his injuries are traceable to the conduct of Defendant.

101. The above-mentioned unsolicited phone communications were linked to Defendant. These unsolicited telephone communications are the source of Plaintiff's and the Class Members' injuries and traceable to Defendant. Thus, Plaintiff has illustrated facts that show that Plaintiff's injuries are traceable to the conduct of Defendant.

***The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"***

102. The third prong to establish standing at the pleadings phase requires

Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

103. In the present case, Plaintiff's Request for Relief includes a request for injunctive relief and statutory damages for each phone communication made by Defendants to cellular numbers who did not previously consent to receive telephone solicitation communications to their cellular phones from Defendant, as authorized by statute in 47 U.S.C. § 227. The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the putative Class Members.

104. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendants on the stated claims.

## CLASS ACTION ALLEGATIONS

105. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class Members").

106. Plaintiff seeks to represent, and is a member of, the Classes, consisting of:

**The Internal DNC Class**
All persons within the United States who received a telemarketing phone call or text from Defendants more than ten business days after said person's request for Defendants to stop contacting them within the four years prior to the filing of this Complaint.

**The Quiet Hours Class**
All persons within the United States who received a telemarketing phone call or text from Defendants before the hour of 8 a.m. or after 9 p.m. local time at the contacted party's location within the four years prior to the filing of this Complaint.

107. Defendants and their employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Class Members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.



KAZEROUNI LAW GROUP, APC

108. Plaintiff and members of the Classes were harmed by the acts of Defendants in at least the following ways: Defendant, either directly or through their agents, illegally contacted Plaintiff and the Class Members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class Members (1) more than ten (10) days after receiving that individual's reasonable revocation request or (2) during the period after 9 p.m and before 8 a.m. local time at that individual's location. Plaintiff and the Class Members were damaged thereby.

109. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the definitions of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

110. The joinder of the Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Classes can be identified through Defendants' records or Defendants' agents' records.

111. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Classes predominate over questions which may affect individual Class Members, including the following:

a. Whether, within the four years prior to the filing of this Complaint, Defendants or their agents placed more than one telephone solicitation to the members of the Class who revoked consent to receive telephone solicitations;

b. Whether, within the four years prior to the filing of this Complaint, Defendants or their agents placed more than one telephone solicitation to the members of the Class before 8 a.m. or after 9 p.m. at that Class

KAZEROUNI LAW GROUP, APC

member's location;

c. Whether Defendants obtained prior express written consent to place telephone solicitations to Plaintiff or the Class members' telephones;

d. Whether Defendants unreasonably flouted requests by Plaintiff and the Class members to terminate telephone solicitations to such consumers' phones;

e. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

f. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

112. As a person who received numerous telephone solicitations from Defendants within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, who revoked consent to receive messages from Defendant, and who received further message after reasonable stop requests, Plaintiff is asserting claims that are typical of both Classes. Plaintiff will fairly and adequately represent and protect the interests of the Classes in that Plaintiff has no interests antagonistic to any member of the Classes.

113. Plaintiff and the members of the Classes have all suffered irreparable harm and invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA, as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the Classes will continue to be damaged and face irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual Class Member's claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein.

114. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

115. A class action is a superior method for the fair and efficient adjudication



KAZEROUNI LAW GROUP, APC

of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

116. Defendants have acted on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA'S INTERNAL DO-NOT-CALL PROVISIONS
### 47 U.S.C. §§ 227, *ET SEQ.*, & 47 C.F.R. 64.1200(d)
### (Against All Defendants)

117. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

118. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*., and the internal do-not-call provision of 47 C.F.R. § 64.1200(d).

119. As a result of Defendants' negligent violations of 47 U.S.C. §§ 227, *et seq*., and of 47 C.F.R. § 64.1200(d) Plaintiff and each member of the Classes are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

120. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*., including implementing regulation 47 C.F.R. § 64.1200(d).

121. As a result of Defendants' knowing and/or willful violations of 47 U.S.C.



KAZEROUNI LAW GROUP, APC

§ 227, *et seq.*, and of 47 C.F.R. § 64.1200(d) Plaintiff and each member of the Classes are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

122. Plaintiff and the Classes are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**SECOND CAUSE OF ACTION**
**NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA'S INTERNAL DO-NOT-CALL PROVISIONS**
**47 U.S.C. §§ 227, *ET SEQ.*, & 47 C.F.R. 64.1200(c)(1)**
**(Against All Defendants)**

123. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

124. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*., and the 'quiet hours' provision of 47 C.F.R. § 64.1200(c)(1).

125. As a result of Defendants' negligent violations of 47 U.S.C. §§ 227, *et seq*., and of 47 C.F.R. § 64.1200(c)(1) Plaintiff and each member of the Classes are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

126. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq*., including implementing regulation 47 C.F.R. § 64.1200(c).

127. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, and of 47 C.F.R. § 64.1200(c)(1) Plaintiff and each member of the Classes are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

128. Plaintiff and the Classes are also entitled to and seek injunctive relief prohibiting such conduct in the future

KAZEROUNI LAW GROUP, APC

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

- An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Class and any subclasses the Court deems appropriate, appointing Plaintiff as a proper representative of the Classes, and appointing Plaintiff's Counsel as Class Counsel;
- An Order declaring Defendants' conduct alleged herein was in violation of the TCPA, the internal do-not-call provision of 47 C.F.R. § 64.1200(d), and the 'quiet hours' provision of 47 C.F.R. § 64.1200(c);
- As a result of Defendants' negligent violations of 47 U.S.C. § 227(c), Plaintiff seeks for himself and each Class member: (i) $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A); (iii) costs of suit; (iv) pre and post-judgment interest; (v) reasonable attorneys' fees pursuant to, *inter alia*, the common fund doctrine; (vi) any other relief the Court may deem just and proper;
- As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff seeks for himself and each Class member: (i) $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A); (iii) costs of suit; (iv) pre and post-judgment interest; (v) reasonable attorneys' fees pursuant to, *inter alia*, the common fund doctrine; and (vi) any other relief the Court may deem just and proper;
- Costs of suit;
- Pre and post-judgment interest, to the extent permitted by applicable law; and
- Any other relief the Court may deem just and proper.

///

KAZEROUNI LAW GROUP, APC

## DEMAND FOR JURY TRIAL

129. Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Dated: October 19, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *\/s/ Ryan L. McBride*
Ryan L. McBride, Esq.
*Attorney for Plaintiff*